Hand-Delivered

FILED
ASHEVILLE, N.C.

OCT 05 2021

U.S. DISTRICT COURT
W. DIST. OF N.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| Rupa Vickers Russe ) <br> 176 Shawsville Pike NE, ) <br> Check, Virginia, 24072 ) <br>            Plaintiff, ) <br> v. ) <br> ) <br> Cindie Harman, ) <br> 500 Mountain View, ) <br> Hot Springs, North Carolina 28743 ) <br>            Defendant. ) | PLAINTIFF'S MEMORANDUM <br> IN SUPPORT OF MOTION TO SEAL, <br> ISSUE A GAG ORDER, AND <br> FOR PROCEEDINGS TO OCCUR <br> UNDER ANONYMITY |

## I. INTRODUCTION

Plaintiff, Rupa Vickers Russe, pursuant to Local Civil Rule 6.1, respectfully submits this memorandum of law in support of her Motion to Seal the entire court record, gag all parties and conduct this proceeding under veil of anonymity for this proceeding until this court has rendered its final verdict. Plaintiff has a compelling countervailing interest in the present matter which requires the sealing of the entire case until after a final verdict is issued. Plaintiff is under the high value risk of threat of personal harm, harassment, business harassment, and/or harassment of Plaintiff's innocent non-party clients by Defendant should Plaintiff's motion be denied. This high value personal risk overrides any common law right of access to the judicial record or documents and, based on the unique facts of this case, there is no alternative to sealing all court filings that would adequately protect Plaintiff's interests.

## II. STATEMENT OF MATERIAL FACTS

Defendant has a history of engaging in extreme and outrageous conduct. She has previously been prosecuted for stalking and harassing a minor child online in 2008, and in 2020

1

to present against Plaintiff. Defendant has: with actual malice published many false statements about Plaintiff and her professional capacity; harassed Plaintiff by printing posters that said "Don't Get Duped By Rupe", and giving them away and having them posted at businesses and at polling stations from October through November 2020; targeted attacks against innocent non-party signers of Plaintiff's March 2020 Unaffiliated petition campaign on her website by publishing their names and addresses along with ridicule to the extent at least one signer called the Madison County Board of Elections to recant their signature; targeted Plaintiff for harassment with false statements that Plaintiff was a "Child Popper" and by turning Plaintiff into a character to despise with statements such as "The Rupa's of this World are our enemies". Defendant's actions and statements have harassed Plaintiff and caused Plaintiff to suffer threatening and intimidating experiences with followers of Defendant's website and Defendant's actions have caused Plaintiff to have to rely on anti-anxiety prescription medication to deal with the heart palpitations and insomnia Defendant's actions and online publications caused Plaintiff.

Although Plaintiff and Defendant have never spoken or met, Plaintiff has been the subject of Defendant's marketing of her website by stealing Plaintiff's copyrighted videos, uploading to Defendant's own youtube channel for her channel views; creating mock audio performances on her website pretending to be Plaintiff and making statements as Plaintiff that Plaintiff has never made; and publishing the following statements about Plaintiff:

1. Defendant publishes her statements on a website available to the public entitled, www.savemadisoncounty.org.
2. Defendant has posted the following false statements about Plaintiff including:
    a. "Rupa has a rap sheet of over 24 pages long, which includes Foreclosure,

2

bankruptcy larceny and abuse of her daughter. Rupa Russe is a fraud. PERIOD."

b. "Took someone else's trademark-assaulted her child-Tax delinquent Buncombe-Larceny Buncombe and the beat goes on..."

c. "Ruppa Russe - the idiot with the rap sheet of larceny, assault - delinquency of taxes etc..."

d. "Maybe the skillsets you mean are the facts that you like to bully individuals on facebook and assault your own children?"

e. "She has a rap record of over 24 pages long, which includes larceny - more assault"

f. "Rupa Russe will destroy this County, the last thing we need is her involved with money.";

g. "Rupa - her Bankruptcy";

h. "Look what she did to her daughter"

i. "Child popper - Rupa Russe"

j. "Rupa Russe will destroy this County, the last thing we need is her involved with money."

k. "This woman is a con and a train wreck and wants to freeload off this County"

l. "An attorney is also supposed to have "moral fitness" that makes him worthy of his client's trust [ . . . ] Rupa is "Not" an attorney and is "NOT LICENSED" in NC to practice law PERIOD. Rupa is desperate and lying again - Who wants to vote for a liar?"

  m. "Rupa is desperate and lying again."

  n. "The Rupa's of this world are our enemies."

  o. "Rue - Turkey Vultures feasting on your naivety, thinking you won't figure it out."

  p. "Fake and hiding who they indeed are", in reference to Plaintiff and another Candidate.

  q. "She is lying and selling snake oil to anyone who will listen."

  r. "Maybe the skillsets you mean are the facts that you like to bully individuals on facebook and assault your own children?"

  s. "I will tell you one thing if you Democrats tomorrow vote to put this train wreck on the rail to be on the November ballot. I will go to every County listed below and research the background for all these litigations" and

  t. "Boo Hoo poor Pimple Child Popper-Rupa Russe complaining she is being bullied-Honey, if you can't take the heat, get out of the kitchen. Because it is going to get hotter..."

3. Defendant printed and distributed multiple signs stating "Don't Get Duped By Rupe. Truth Matters. Vote No to Rupa Russe" and gave them away to residents to put in their yards, and posted them along the Madison County roadways and at polling stations during the 2020 general election.

4. Plaintiff ran for public office as the Democrat nominee for County Commissioner in the 2020 general election.

5. Plaintiff attempted to have her name listed on the ballot as an unaffiliated

4

candidate in March 2020 for a North Carolina House of Representatives seat, but did not gain the required number of signatures.

6. Defendant published the names of the individuals who signed Plaintiff's petition to run as an unaffiliated candidate in March 2020, on her website and claimed Plaintiff had engaged in voter fraud, and that according to Defendant she had filed a complaint with the North Carolina State Board of Elections for Plaintiff's alleged voter fraud in her unaffiliated campaign. At least one signor of Plaintiff's petition recanted her signature because of the attention of it being published on Defendant's website.

7. That Defendant had stated on her website that she had contacted the N.C. Bar to report Plaintiff for falsely claiming she was a lawyer prior to the N.C. Bar issuing Plaintiff's license to practice law.

8. That Defendant published statements on her website characterizing Plaintiff's acceptance to practice law in North Carolina as a lie, after Plaintiff received notice she had been approved to practice law in North Carolina.

9. That Defendant has had her website taken down by her hosting company following January 06, 2021 due to its content.

10. That Defendant has posted the following statements on her website:

    a. "Make them pay"

    b. In a post calling on Madison County patriots to join Gideon's Army, "The Deep State and these families want to take everything from you - they want to own you. You will own nothing not even your children."

    c. "We live in a great time; we have a chance to change the evil that has been

5

in force in our country and our world for many generations."

    d.    "big things are about to happen, and the Deep State and Leftist Democrats are panicking. Nothing can stop what is coming nothing and they can't put out our light because the truth will prevail through all....CH"

    e.    "Your turn to stand up and fight for your country. Trust the plan the Patriots have in place."

    f.    "To clean up the mess in 2021 that we began to see clearly in 2020 will take extraordinary efforts by each Patriot who loves freedom and our nation founded under God. Many military patriots in our country asked [Trump] to lead the fight against the Deep State and their plan of "The Great Reset"."

    g.    "Q-It's time to wake up- Q is Military Intelligence."; "What really matters is that Q is a GOOD psyop, and you need to do more research if you don't realise that it's directly linked with the Trump family & Administration. Q is designed to Awaken the World and get people to dig and research."; and "Q is showing the globe the EVIL that has been going on in this World.

11. That Plaintiff has never filed for Bankruptcy, has never been charged with assault of a child, or been charged with multiple assaults, and has never been convicted of larceny or assault.

## III. LEGAL ARGUMENT

As a general rule, the common law affords the general public a right of access to judicial

6

Case 1:21-cv-00270-MR-WCM   Document 2   Filed 10/05/21   Page 6 of 19

documents and filings. See Nixon v. Warner Communications, Inc., 435 U.S. 589 (1978); Stone v. University of Maryland Medical System Corp., 855 F.2d 178, 180 (4th Cir. 1988). This common law right attaches to all "judicial records and documents," or documents that a court "uses in determining litigants' substantive rights." Haas v. Golding Transport Inc., No.1:09CV1016, 2010 WL 1257990 (M.D.N.C. Mar. 26, 2010). However, the public right to access is not absolute and may be limited in situations where there is a countervailing interest that mandates against access. Nixon, 435 U.S. at 590. In general, the common law "presumption of access may be overcome if competing interests outweigh the interest in access." Stone, 855 F.2d at 180.2 In addition, generally a court that grants a motion seeking the sealing of records must provide the public with adequate notice and consider alternatives to filing under seal, however, the docketing of a motion to seal can satisfy the "public notice" element of the "procedural" portion of the Fourth Circuit's sealing standard. *See* Stone, 855 F.2d at 181.

### Higher Value Standard

The Supreme Court established a "governmental interest" standard when assessing whether privacy concerns outweighed the public's right to access the judicial branch's proceedings, however "[i]n order to vindicate an individual's right to personal privacy some courts have substituted the notion of "higher value" for the standard "governmental interest"" where privacy concerns are of just an importance and may have more personally damaging effects if disclosed based on the [ . . . ] the media attention likely to be drawn to a private matter, or based on the known behaviors of a party to attempt to harass, intimidate, or cause emotional distress to a party through attention drawn to the proceedings". Level 3 Communications, LLC v. Limelight Networks, Inc., 611 F. Supp. 2d 572, 580-83 (E.D. Va. 2009).

### First Amendment

7

The Supreme Court has held that the presumption to openness can be overcome by proving "higher values [that are] narrowly tailored to serve that interest." Press-Enterprise Co. v Superior Court of Cal. 464 US 501, 508-509, 104 S. Ct 819, 78 L. Ed 629 (1984). This Circuit has held that "private interests may overcome the First Amendment right of access" P&L Dev. LLC v. Bionpharma Inc., No 1:17CV1154, 2019 US List. LEXIS 79309, 2019 WL 2079830, at *2(M.D.N.C. May 10, 2019)("the parties must establish a high likelihood of substantial and irreparable harm if the motions to seal are denied."). Further, the Fourth Circuit has held that "protective orders 'aid the civil courts in facilitating resolution of private disputes'". In re Grand Jury Subpoena, 836 F.2d at 1472. This Circuit has endorsed the position that a private business's interests can overcome both the common law and the First Amendment rights of access. Columbus-America, Discovery Group Atlantic Mut. Ins. Co., 203 F.3d 291.

## Common Law

The United States Supreme Court has identified the following examples of "competing interests" that courts have found sufficient to overcome the common law right of access: 1) the interest in "insur[ing] that [court] records are not used to gratify private spite or promote public scandal [such as] through the publication of the painful and sometimes disgusting details of a divorce case"; and 2) the interest in precluding the use of court "files to serve as reservoirs of libelous statements for press consumption". Nixon, 435 U.S. at 589. "The Supreme Court thus stated: [T]he common law right of inspection has bowed before the power of a court to insure that its records are not used to gratify private spite or promote public scandal through the publication of the painful". Nixon, 435 U.S. at 598. Similarly, courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption, or as sources of business information that might harm a litigant's competitive standing. Nixon, 435 U.S. at 598.

8

### Substantive and Procedural Requirements

In light of this legal framework, "[w]hen presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements. As to the substance, the district court first must determine the source of the right of access, [ . . . ] because only then can it accurately weigh the competing interests at stake." Va. , Dep't of State Police v. Wash. Post, 386 F.3d 567, 576 (4th Cir. 2004). The Fourth Circuit requires parties file "a brief complying with the Fourth Circuit's mandate, demonstrating the necessity and propriety of sealing information" Hall v. United Air Lines, Inc., 296 F. Supp. 2d 652, 679-80 (E.D.N.C. 2003). The burden of establishing necessity for judicial proceeding to be sealed rests on the party promoting the denial of access. Procedurally:

> [The district court] must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing. Adherence to this procedure serves to ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review.

Va. , Dep't of State Police, 386 F.3d at 576.

### IV. PLAINTIFF'S SUBSTANTIVE ARGUMENTS

Plaintiff and Defendant are private parties who are both adults, over the age of 18 years of age. Plaintiff is not concerned with criticism or annoyance, she is exclusively concerned with the injury she, her business, or clients may suffer if Plaintiff's motion is denied. This is a unique sensitive private dispute about which the public will gain no benefit in being able to participate while the adjudication of this matter takes place, but great harm to Plaintiff, her business and her innocent non-party clients could occur if the adjudication occurs under the unnecessary public spectacle that Defendant is likely to bring to this proceeding. This matter is highly sensitive

solely because of Defendant's history of extreme and outrageous previous actions and statements, against Plaintiff, against voters who signed Plaintiff's Unaffiliated petition. In a 2008 unrelated matter, at trial Defendant was found to have published online comments that stalked and harassed a middle school age child. Ramsey v. Harman, 191 N.C. App. 146, 661 S.E.2d 924 (2008)(The N.C. Court of Appeals overturned the trial court's decision on grounds that no emotional distress had been found by the trial court). Defendant's history shows her pattern and practice of engaging in extreme and outrageous conduct. Defendant's history shows her to be willing to engage in extreme and outrageous conduct to promote a public spectacle regardless the injury to the object of her statements. Defendant has made statements in support of Q-Anon ("a GOOD psyop"), and that community of supporters are particularly willing to engage in behaviors that are extreme and outrageous against folks they believe are the "enemy". Defendant's history of statements include castigating Plaintiff as "their" "enemy".

## High Value Risk

Plaintiff is a single 47 year old woman who has had Defendant's supporters intentionally physically intimidate and act in hostile manner towards Plaintiff personally. **EXH 1**. The public's interest in having confidence in the judicial proceedings is far outweighed by the likelihood of high value risk of injury to Plaintiff's person, her property, her business reputation and/or Plaintiff's innocent non-party clients. The following has occurred because of Defendant's statements and actions, that indicate Defendant's propensity to to pursue future gratification of her private spite or promote public scandal:

1. Defendant has Published Public Signs attacking Plaintiff

10

Additionally, Plaintiff's extreme and outrageous conduct of publishing signs attacking Plaintiff's character and having them posted at public establishments, polling stations, private residences, churches, and giving them away freely to any other resident in Madison County is a sign of Defendant's depravity and indicates the degree to which Defendant will go to attack a person she has never met, but actively has sought to create fear about. **EXH 2.**

## 2. Plaintiff has suffered Personal intimidation and harassment by supporters of Defendant

Plaintiff had a particularly ominous encounter with supporters of Defendant's website who were distributing her signs at a polling station while Plaintiff was present and without any campaign support staff or friends. Plaintiff was standing at the legally allowed location for candidates at the polling station when two very large trucks with multiple confederate flags and Trump flags pulled up. Four very large burly men with tank tops on pulled out multiple of Defendant's "Don't Get Duped By Rupe" signs and carried them aggressively towards Plaintiff as they approached to set the signs in front of the polling station entrance. As the men approached, Plaintiff and the men's eyes took notice of each other and the men stopped, laughed and placed the signs. Then they returned to their trucks, which were not in close proximity to the polling station entrance. They waited there, honked their horns, and made a ruckus. So intimidated was Plaintiff due to the mens behaviors and that she was alone, that she quietly sought to leave, walking back to her car which happened to be parked in close proximity to where the four men had parked. The men were watching Plaintiff the entire way, making loud comments and laughing. Plaintiff was able to drive away without physical harm but was intimidated, embarrassed and felt harassed to the point that she could not stay and continue to campaign.

11

On two other separate occasions two large men, when they found out Plaintiff's identity, came right up to Plaintiff and stuck their pointer finger in her face and said "YOU, are the problem". One of the men, while at a polling station, was particularly angry and referenced that Plaintiff would see what is coming, "because it's coming for people like you".

Defendant's persistent false statements that Plaintiff was a liar and trying to defraud voters, in a community where liars and fraudsters are not seen in a positive light raised the level of anger at Plaintiff based on Defendant's statements. People Plaintiff had previously had good conversations with when they had met her during Plaintiff's unaffiliated petition drive, in which she personally got over 2,000 signatures in 45 days, suddenly saw Plaintiff as one who decieves and someone who had defrauded them to get their signature merely because of Defendant's false statements. And at least two individuals contacted the Madison County Board of Elections, one demanding her signature and address be removed from the petition.

### 3. Extreme and Outrageous Conduct Causing Injury

Defendant has been willing to engage in conduct that has been so extreme and outrageous that Plaintiff has been damaged in multiple ways, including fearing for her life directly due to the persistent, Q-Anon, Trump supporter triggering false statements Defendant has published about Plaintiff, and by using Plaintiff's first name as a label for "their" "enemies of the world". **EXH 3.** Including, "The Rupa's of Marxist Hill"; "Madison County is one big Muck polluted by Marxists like Rupa". Plaintiff required medical assistance to address the heart palpitations and insomnia caused by the emotional distress about fearing for Plaintiff's safety, threats to Plaintiff's person, and professional reputation, and the extreme harassment Defendant engaged in, and in anticipation of what next Defendant would do to attempt to injure Plaintiff.

12

Plaintiff knows of no candidate in Madison County who has ever had a private citizen print and distribute signs attacking a candidate at polling stations, private businesses, and along roadways. Doing so was so far outside the norm as to qualify as extreme and outrageous by the objective community standards. Plaintiff knows of no candidate in Madison County had ever had a private citizen print and distribute signs that defamed the character of a candidate for their lack of truthfulness and likelihood to defraud people. Doing so was so far outside the norm as to qualify as extreme and outrageous by the objective community standards. In her published statements, Defendant intentionally went to extreme and outrageous measures to paint Plaintiff as a morally corrupt individual who would steal your property ("trademark") and your taxes (She should never be allowed the County finances; filed for Bankruptcy) **EXH 5.**

4. Parody and Ridicule of Plaintiff

Defendant has shown that her interest in harassing and humiliating Plaintiff has no ends. To date, Defendant has searched through Plaintiff's public records and intentionally misrepresented them, Defendant has created an audio performance that she published on her website, called "Rupa's beans" in which she records her own voice pretending to be Plaintiff's and makes outlandish statements that Plaintiff has never made.

5. Voter Intimidation, after the fact

Defendant has published the names and addresses of all the people who signed Plaintiff's petition to become an unaffiliated candidate and cast them in the light of being shameful for having supported Plaintiff, and has caused at least one to recant her signature because of the Defendant's publication and the resulting attention the signer received. Defendant has stated that

13

she has filed a complaint with the North Carolina State Board of Election that Plaintiff has engaged in voter fraud. **EXH 6**. The chill on the community because of the extreme actions of Defendant towards Plaintiff indicates the potential for further harm and injury to Plaintiff's person and business as a North Carolina licensed Attorney, if Defendant is not barred from publishing, sharing information about this case, or discussing it with anyone not directly participating in this case.

6. Calls for Gideon's Army to Support Donald Trump

Defendant's website references Q-Anon as a "Good Psyop". Additionally, Defendant is an avowed supporter of Donald Trump, and has since the election cycle claimed Gideon's Army is being called to act. **EXH 4**. Her website was removed by its hosting site in the days after the January 06, 2021 insurrection on the Washington D.C. Capital due to its content. Defendant engages in statements that are highly inflammatory calls to action, and she seeks reinstatement of Donald Trump as President based on an argument god intends it to be so, and that military proponents support it.

**Concern for future harm**

Defendant's known behaviors to attempt to harass, intimidate, or cause emotional distress to Plaintiff during the 2020 election cycle, and her subsequent references to Plaintiff, once Plaintiff returned to being a private citizen, using Plaintiff's name as a "label" to trigger her viewers who are angry about the state of our government indicates the high likelihood that Defendant will lock on to this lawsuit in an attempt to further humiliate, harass, and use her website and social media platform to cause harassment or inspire harassment by others towards Plaintiff, Plaintiff's business or to Plaintiff's innocent non-party clients.

14

Case 1:21-cv-00270-MR-WCM   Document 2   Filed 10/05/21   Page 14 of 19

### *i. Publications*

The highest value in this case is the personal safety of all parties, including the innocent non-parties, as well as the business interests of Plaintiff who has been mercilessly attacked and painted in a false light by Defendant continuing throughout 2021 ("Grifter - Child Popper AKA Rupa Russe"; "Rupa is a grifter"; "The Rupa's of Marxist Hill"; "Madison County is one big Muck polluted by Marxists like Rupa"), in a community whose market for legal professionals is small. Plaintiff's right to feel safe, and be free from intentionally malicious harassment by Defendant online or through signs Defendant may design, purchase and distribute, are a higher value than the public's right to access this sensitive proceeding while it is being adjudicated.

### *ii. Physical Injury -Person*

Based on the published statements Defendant continues to make about Plaintiff, castigating her as the "fraud", "liar", "Marxist", "enemy of this world", has resulting in Plaintiff having men engage in threatening behavior towards her, resulting in two confrontations. Persons Plaintiff had good encounters with during her 2020 Unaffiliated campaign have recanted their signatures simply due to Defendant's statements and behaviors. Plaintiff reasonably fears the high value risk of personal injury to Plaintiff will exist while this case proceeds. Plaintiff is most concerned with physical harm and attacks on her reputation as an Attorney that would in turn negatively impact Plaintiff's law practice.

Based on the Defendant's history and for the aforementioned reasons, Plaintiff reasonably fears she will experience violence, harassment, humiliation or threats by Defendant or by one of the Defendant's supporters, Defendant's website caters to those who has a mistrust of politicians, and include Q-Anon believers, who Plaintiff reasonably believes would be triggered by her seeking justice in the judicial branch.

### *iii. Physical Injury -Innocent non-party Plaintiff's Clients*

Plaintiff is still providing legal services to clients who are residents of and have matters pending in Madison County. Based on the what Defendant has done to the people who signed Plaintiff's unaffiliated petition, the likelihood that Defendant will target and harass any clients who chose to hire Plaintiff is high. As some of Plaintiff's clients are high profile matters in Madison County, their unrelated interests will be negatively publicized, and Plaintiff's business relationships will be damaged by Defendant's likely retaliatory actions for Plaintiff seeking remedy for injuries Plaintiff alleges Defendant has caused.

### V. ALTERNATIVES TO SEALING

Due to Defendant's history of extreme and outrageous conduct online and through publishing signs, not issuing a gag order and seal on this case to proceed under anonymity will foster a public spectacle that will not be beneficial to the court's purpose, or to Plaintiff, and will result in injury to Plaintiff. Plaintiff argues that any opportunity for Defendant, or the public to be on notice there is a lawsuit between the parties will result in unwarranted publicity and a high risk for harassment, injury or physical harm to Plaintiff, or Plaintiff's business or clients. Defendant is prone to extreme and outrageous actions and statements. If Defendant's supporters are put on notice of this lawsuit, based on their past behaviors towards Plaintiff, and Defendant's support of Donald Trump, Q-Anon, and her support for a disdain for the deep state, and the creation of an army against their enemies, Plaintiff fears her personal safety could be at risk.

**Sealing Documents**

Defendant's statements are already public, and have been viewed and shared by the public locally and as far away as California. **EXH 7** Plaintiff's case rests on the information in the public record. Just sealing documents related to this matter will not effectuate the protections

16

Plaintiff needs in order to be protected from further harassment of her person, her business, or her clients by Defendant. For this reason redaction is also not effective to protect Plaintiff's person, her business or her innocent non-party client's. Plaintiff is confident Defendant will attack Plaintiff and anyone who has associated with Plaintiff with retaliatory purpose in an extreme and outrageous manner while this case is proceeding.

### Pseudonyms

Unfortunately, pseudonyms in this case will not effectuate the security Plaintiff seeks. Plaintiff is attempting to protect herself from Defendant's sharing of the contents and existence of this lawsuit to the public as she fears such knowledge will be grounds for one of Defendant's supporters to be triggered to attack Plaintiff because Plaintiff has been defined by the Defendant as their "enemy". Based on Defendant's past behaviors, it is highly likely that if this Court grants pseudonyms in this case, Defendant will create a narrative of the case that will potentially include language such as "a recent female candidate for local office who I have spoken of a lot, has filed a lawsuit and her pseudonym is". Based on the content of Defendant's website, her specific choice of words at times, and her past use of creative workarounds to overcome legal roadblocks to her behavior (see her recording of the "Rupa beans" podcast pretending to be Plaintiff, after Plaintiff contacted Youtube and Defendant's website and made her claim to copyright protection of Plaintiff's content that Defendant had misappropriated and uploaded through her own channel for Defendant's own website views), the use of a pseudonym will not limit the Defendant damage to Plaintiff in the local community, or by stimulating a larger pro-Trump audience who is eager to find excuses to hate their "enemies" and politicians right now.

As no reasonable alternatives to a gag and total seal to proceed under anonymity exists, Plaintiff requests that Defendant shall be placed under a gag order so that she cannot disclose, discuss, publish information to third parties or new organizations or share information about Plaintiff, Plaintiffs' business, Plaintiff's clients, Plaintiff's Attorney, or about this lawsuit except as relates to her communications with her Attorneys and her witnesses, to the degree this court believes Plaintiff's security and freedom from harassment and intentional infliction of emotional distress can be preserved. Additionally, Plaintiff requests that Defendant not have access to Plaintiff's new home address. Plaintiff voluntarily accepts the same restrictions.

## VI. CONCLUSION

Plaintiff does not make this request lightly of this court. Plaintiff has made no unsubstantiated claims, and is not speculating about the risk she is fearful she personally will be under if this case is not sealed under an order of anonymity and with an accompanying gag order until the adjudication is complete. Defendant has regularly dehumanized Plaintiff in the eyes of her supporters as "their" "enemy" that they must include in their defeat. Defendant has the reasonable ability to creates a very high value risk to Plaintiff's safety that Plaintiff asks the court to protect her from, solely based on Defendant's extensive extreme and outrageous, unprecedented in the community of Madison County, conduct towards Plaintiff.

Plaintiff's motion to seal the complaint and all court records is appropriate as, pursuant to local rule 6.1, and that pursuant to the Plaintiff providing evidence (Defendant's false statements and signage, targeting and harassing innocent non-party supporters of Plaintiff) sufficient to prove the higher value standard is met to grant Plaintiff's motion: based on Defendant's likely extreme and outrageous conduct to retaliatorialy misuse of her online presence, or use of printed signs to create a reasonable for Plaintiff's physical safety, Plaintiff's business reputation and

18

Case 1:21-cv-00270-MR-WCM   Document 2   Filed 10/05/21   Page 18 of 19

profits, and that of innocent non-party clients of Plaintiff's; that the matter is not of public importance during its adjudication; and that Defendant will not be negatively impacted by restricting her likely use of this matter to gain public notoriety, attention, or spotlight while and until the court has issued its final decision in this matter.

Plaintiff respectfully requests the Court grant Plaintiff's Motion to Seal this complaint, and all this matter's records under Order of Anonymity and with an accompanying Gag Order preventing any disclosure of the action, and any discussion by either party about the other party until after a final decision has been rendered, or as this court deems most appropropriate.

Date: 05th day of October, 2021.

By: /s/Brooke Scott
Brooke Scott
Attorney, NCSB #55391
1111 Consortium Drive Unit 106
Raleigh, NC 27603
Tel: (252)361-2291
Email: bnscott1011@gmail.com